NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LESSIE N., JAMES D., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, B.H., S.D., *Appellees*.

No. 1 CA-JV 18-0305
FILED 2-26-2019

Appeal from the Superior Court in Mohave County
No. S8015JD201600081
The Honorable Douglas Camacho, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Harris & Winger, P.C., Flagstaff
By Chad Joshua Winger
*Counsel for Appellant James D.*

Mohave County Legal Defender's Office, Kingman
By Eric Devany
*Counsel for Appellant Lessie N.*

Arizona Attorney General's Office, Mesa
By Lauren J. Lowe
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Chief Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Kenton D. Jones joined.

---

**T H U M M A**, Chief Judge:

**¶1**          Lessie B. (Mother) and James D. (Father) appeal from an order terminating their parental rights to B.H. (for Mother) and S.D. (for both). Because neither has shown error, the order is affirmed.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2**          Mother is the biological parent of B.H. (born in 2005) and S.D. (born in 2010) and Father is the biological parent of S.D.; B.H.'s father is deceased. In October 2016, the Department of Child Safety (DCS) took B.H. and S.D. into care and filed a dependency petition alleging substance abuse as to Mother (including methamphetamine and prescription medication) and neglect as to both parents. In February 2017, the children were found dependent and the court adopted a family reunification case plan, concurrent with severance and adoption.

**¶3**          DCS provided numerous services to Mother and Father, including drug testing, parent-aide services, supervised visits and counseling. Both parents participated in services sporadically throughout the dependency, with each completing some parenting and substance abuse classes. They attended most visits and generally appeared at hearings, team decision making meetings and foster care review board meetings.

**¶4**          Neither Mother nor Father regularly participated in drug testing and, when they did test, both were repeatedly positive for, at different times, methamphetamine, heroin and opiates. In January 2018, at DCS' request, the court changed the case plan to severance and adoption.

---

[1] This court views the evidence in a light most favorable to sustaining the superior court's findings. *See Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 206, 207 ¶ 2 (App. 2008).

As amended, DCS' motion to terminate alleged substance abuse and 15-months time-in-care and that termination was in the children's best interests.[2] *See* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(3), (8)(c) (2019).[3]

**¶5**     Father continued to test inconsistently and tested positive for methamphetamine and opiates as late as March 2018. Father later tested negative in April 2018, approximately two months before the two-day termination adjudication hearing began in June 2018. During this same time, Mother continued to miss drug tests and failed to provide documentation from a physician supporting her claimed inability to test.

**¶6**     At trial, DCS called a case specialist as its only witness, and both Mother and Father testified to their long-term substance abuse history. As to more recent use, Father testified to having used methamphetamine "maybe in April" and heroin "three or four months" before he testified in June 2018. Mother testified she had used methamphetamine "[m]ore than a month" before testifying in June 2018 but was "not exactly sure" when.

**¶7**     At the close of the evidence, the court found DCS had proven both statutory grounds by clear and convincing evidence, as to both Mother and Father. Recognizing best interests was "[t]he more difficult issue," the court found that B.H. was in an adoptive placement and both children were adoptable, had been in care "for quite some time, and [did] need stability." The court also expressed concerns regarding Mother's ability to "address the substance abuse issues" and Father's failure to provide a proper home environment and pattern of "ramp[ing] it up a little bit right before hearings." Accordingly, the court found it was "in the best interests of the children to terminate the parent-child relationship" and terminated Mother and Father's parental rights.

**¶8**     This court has jurisdiction over the parents' timely appeals pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-2101(A) and -120.21(A)(1) and Ariz. R.P. Juv. Ct. 103-04.

---

[2] Although DCS also initially sought termination of Mother's parental rights to another child, the case plan for that child was later changed to independent living and that child is not part of this appeal.

[3] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

**DISCUSSION**

**¶9**         As applicable here, to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground articulated in A.R.S. § 8-533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the children. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights so long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citations omitted).

**I.     The Superior Court Properly Found DCS Proved Chronic Substance Abuse By Clear And Convincing Evidence.**

**¶10**         A court may terminate parental rights if it finds by clear and convincing evidence "[t]hat the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." A.R.S. § 8-533(B)(3). "Chronic" use need not be constant but must be long-lasting. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377 ¶ 16 (App. 2010). Periods of temporary abstinence from drugs are insufficient to outweigh a parent's significant history of abuse. *Id.* at 379 ¶ 29. "Accordingly, a child's interest in permanency must prevail over a parent's uncertain battle with drugs." *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287 ¶ 17 (App. 2016).

**A.     Father Has Failed To Show The Court Erred In Terminating His Parental Rights Based On Chronic Substance Abuse.**

**¶11**         Father argues the evidence was insufficient to establish all elements of the substance abuse ground "because solely lay testimony was presented" and "expert testimony is required." Father provides no authority for his assertion that "expert testimony is required to show a nexus between an illness, deficiency, or chronic abuse and an inability to parent." Father cites *Maricopa Cty. Juvenile Action No. JS-378*, 21 Ariz. App. 202 (1974) to suggest that a finding of "prolonged continuance [of an underlying prohibited condition] requires expert testimony," and that "A.R.S. § 8-533(B)(3) requires a diagnosis by a qualified medical doctor, a psychiatrist or certified psychologist." In *JS-378*, however, DCS'

predecessor agency sought termination based on mental illness or deficiency, not substance abuse. *Id.* at 203. Here, DCS did not allege mental illness or deficiency but solely a history of drug abuse. Furthermore, even absent expert testimony, the court reasonably could find DCS proved each element of the substance abuse ground by clear and convincing evidence.[4]

**¶12**        Father, age 54 at the time, admitted in a behavioral health assessment intake that he first used methamphetamine when he was 19, opioids at 44, and heroin 6-8 months before the intake. He reported daily usage of all three substances and testified at trial his longest period of sobriety was ten years (during which he was incarcerated for all but two and a half years) and candidly admitted to struggling with substance abuse for much of his life. The court could reasonably find this history, albeit containing periods of sobriety, established Father's "chronic" drug use. *Raymond F.*, 224 Ariz. at 377 ¶ 16. Moreover, although Father is correct that no expert testified at trial, evidence admitted at trial without objection showed Father was diagnosed in 2017 by a behavioral health technician as having amphetamine-use disorder and dependence, opioid-use disorder and dependence and heroin dependence, based on his self-reported substance use history.

**¶13**        The court found Father's testimony that his substance abuse did not affect his ability to parent was not credible. In doing so, the court noted that "the condition of at least the outside of the home . . . continues to remain poor;" "[t]here is evidence that the children were not getting enough food when . . . in the care of the parents, including" Father and "substance abuse did affect [Father's] ability to discharge parental responsibilities." Father, however, had been unable to adequately address his substance abuse issues resulting in his inability to parent.

**¶14**        To his credit, Father attended substance abuse classes, participated in a detox process, enrolled independently in a program to address his opioid use and provided negative drug tests in June 2017 and April 2018. During the dependency, however, Father repeatedly failed to test and, when he did, tested positive for methamphetamine, heroin and opioids, doing so after completion of substance abuse classes and at least

---

[4] Although Father cites cases upholding termination that involved "expert testimony and/or psychological evaluations," none of the cited cases establish that either is *required* under A.R.S. § 8-533(B)(3). *Cf. E.R. v. Ariz. Dep't of Econ. Sec.*, 237 Ariz. 56, 59 ¶ 15 (App. 2015) (concluding termination based on neglect or abuse under A.R.S. § 8-533(B)(2) "does not require . . . the diagnosis of a medical doctor or psychologist").

one detox program. Father tested positive for methamphetamine as late as March 2018 and, at the June 2018 trial, admitted to "maybe" using methamphetamine in April 2018 and heroin 3-4 months earlier. "Father's temporary abstinence from drugs . . . does not outweigh his significant history of abuse or his consistent inability to abstain during this case." *Raymond F.*, 224 Ariz. at 379 ¶ 29; *see also Jennifer S.*, 240 Ariz. at 288 ¶ 25 (finding mother's "sobriety in the months immediately preceding the severance hearing . . . [did] not outweigh her significant history of drug abuse or her demonstrated inability to remain sober during much of the case").

¶15 This evidence of Father's significant history of drug use, recent drug use, and failure to maintain sobriety despite completion of several recovery programs, properly allowed the superior court to reasonably conclude that Father's chronic drug abuse will persist for a prolonged indeterminate period and continue to negatively affect his parenting abilities. On this record, Father has not shown the court erred in finding DCS properly had proven the substance abuse ground.

¶16 Father also argues the superior court's findings "lack the requisite specificity." Father failed to raise the issue with the superior court, and "generally, failure to raise an argument in the superior court waives the issue on appeal." *Aleise H. v. Dep't of Child Safety*, 245 Ariz. 569, 573 ¶ 12 (App. 2018) (citation omitted). Recognizing whether to find waiver is discretionary, "in the exercise of that discretion, on the record presented and to prevent avoidable delay, this court concludes that [Father] has waived any claim []he may have had that the superior court did not make adequate" findings. *Id.* at 573 ¶ 13.

### B. Mother Has Failed To Show The Court Erred In Terminating Her Parental Rights Based On Chronic Substance Abuse.

¶17 Mother argues there was insufficient evidence for the court to find that her "alleged history of chronic substance abuse rendered her unable to discharge her parental responsibilities." Along with summarizing Mother's "history of chronic abuse of dangerous drugs," the court found that "the children's reported statements regarding lack of food, the condition of the home at the time of removal, [and M]other being contacted by school but never actually showing up" all showed her substance abuse "causes an inability to discharge parental responsibilities." The court then found DCS made reasonable efforts to provide rehabilitative services for Mother, discussed her refusal to participate in drug testing and her positive

tests and concluded by finding "no evidence that [M]other has done anything to address her substance abuse and that it is reasonable to believe that condition will continue for a prolonged indeterminate period of time."

¶18 Mother challenges the findings, arguing (1) a lack of food was no longer an issue because she brought food to visits with the children; (2) the case specialist had never been inside the home and (3) "there was no manifest connection between Mother's failure to show up at the school and her behavior the following day and actual drug use."

¶19 Providing food to her children during weekly visits does not negate Mother's failure to do so prior to the children's removal and does not establish her ability to do so daily, particularly in light of her inability to address her substance abuse. Although the case specialist who testified had not been inside the home, the evidence before the court was that the home had "a mice infestation along with dog feces, and rotten food within the reach of the children," and Mother "appeared to be under the influence of substances" at the time of removal. The trial evidence also included a report that Mother appeared under the influence during a visit to B.H.'s school, and her hair follicle sample provided less than a week later was positive for methamphetamine, heroin and morphine. This evidence, coupled with Mother's refusal to participate in drug testing and her positive tests, allowed the court to reasonably find that her substance abuse led to her inability to discharge parental responsibilities and that DCS had proven the statutory ground by clear and convincing evidence.

¶20 The trial evidence also showed that Dr. Stephen Gill conducted a psychological evaluation of Mother in February 2018 and that his resulting report noted "[s]obriety is essential to consider [Mother's] ability to at least minimally parent." Despite Dr. Gill's analysis and the connection between substance abuse and parenting ability, Mother failed to achieve or maintain sobriety during the case. She failed to consistently provide urinalysis tests, failed to provide requested documentation supporting her alleged inability to do so and tested positive for at least one illegal substance nearly every time she provided a hair follicle sample. On this record, Mother has not shown the court erred in finding DCS had proven the substance abuse ground.[5]

---

[5] Given this conclusion, the court need not, and does not, address the parties' arguments addressing the 15-months time-in-care ground. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 3 (App. 2002).

II.     **Neither Father Nor Mother Has Shown The Superior Court Erred In Finding Termination Was In The Best Interests Of The Children.**

¶21     Mother and Father argue the evidence does not support the superior court's best interests finding. Both emphasize that the children were bonded to them and that S.D. was not in an adoptive placement at the time of termination.

¶22     When a statutory ground for termination has been proven, "the focus shifts to the interests of the child as distinct from those of the parent," *Kent K.*, 210 Ariz. at 285 ¶ 31, and "[t]he 'child's interest in stability and security' must be the court's primary concern," *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 12 (2018) (citation omitted). "To establish that severance of a parent's rights would be in a child's best interests, 'the court must find either that the child will benefit from termination of the relationship or that the child would be harmed by continuation of the parental relationship.'" *Mario G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 282, 288 ¶ 26 (App. 2011) (citation omitted). "It is well established in state-initiated cases that the child's prospective adoption is a benefit that can support a best-interests finding," *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4 ¶ 16 (2016) (citation omitted), recognizing the court "must consider the totality of the circumstances existing at the time of the severance determination," *Alma S.*, 245 Ariz. at 150-51 ¶ 13. The record is viewed in a light most favorable to upholding the best-interests findings, and findings of fact are to be affirmed "'if reasonable evidence and inferences support them.'" *Id.* at 151 ¶ 18 (citation omitted).

¶23     As applied here, based on the trial evidence, the superior court properly found that the children would benefit by termination because they "are adoptable," "[B.H.] is in an adoptive placement," "[t]here is a good chance of both children being adopted with the termination," and "considering that the children have been in out of home placement for a lengthy period of time, they need stability now." Although S.D. was not in an adoptive placement, a family member "ha[d] expressed interest in adopting" him and he was "in the process of being placed with a grandparent or another member of" his extended family.

¶24     The court also properly found the children would be harmed absent termination because it was unclear "how long it would take the [M]other to be in a position to parent," Father's house was still inappropriate for housing the children, and there "[wa]s concern that [F]ather ramps up his efforts a little bit before hearings and therefore is not

making lasting behavioral changes" regarding substance abuse. The court therefore found both that the children would "benefit from termination of the relationship [and] . . . would be harmed by continuation of the parental relationship." *Mario G.*, 227 Ariz. at 288 ¶ 26 (citation omitted). Either finding supported termination, and both are supported by the trial evidence. Accordingly, Mother and Father have failed to show error in the superior court's best interests finding.

## CONCLUSION

¶25        Because Father and Mother have shown no error, the superior court's order terminating their parental rights is affirmed.

