NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOE T., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, G.T., J.T., O.T., *Appellees*.

No. 1 CA-JV 18-0432
FILED 4-25-2019

Appeal from the Superior Court in Maricopa County
No. JD34314
The Honorable Karen A. Mullins, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Jon W. Thompson and Vice Chief Judge Peter B. Swann joined.

---

**M O R S E**, Judge:

¶1        Joe T. ("Father") appeals the superior court's order terminating the parent-child relationship between him and G.T., J.T., and O.T., ages two to six (the "Children"). For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        In December 2016, the Children came into contact with DCS because they were found wandering the streets alone. At the time, they were living with their mother. The Children were placed with their maternal grandmother, but were removed and placed with a foster family in May 2017. The Children were subsequently found to be dependent as to their mother and Father.

¶3        Father has a long history of abusing drugs and alcohol. He first used methamphetamine when he was fifteen. Father continued to actively abuse drugs during the course of this case. DCS twice referred Father to substance abuse treatment and testing, but the referrals were closed unsuccessfully. Father stated that he did not immediately participate because he did not believe in therapy. Father testified he stopped using drugs in February 2018. He began consistently testing negative for drug use in April 2018.

¶4        Jonathan Shelton, a clinical psychologist, examined Father. In his report, Dr. Shelton opined that the Children could not be safely put into his care because of his "extensive substance abuse history and erratic behavior." He also stated that there were reasonable grounds to believe that Father's drug use would continue for a prolonged, indeterminate period, citing Father's responses that demonstrated "a lack of awareness and insight into how his actions have contributed to the current circumstances."

¶5        DCS moved for termination under four separate grounds: abandonment, chronic history of drug abuse, nine months time in care, and fifteen months time in care. The court found that DCS did not meet its burden in proving the abandonment ground, but did meet its burden in

proving the other three grounds for severance. It also found termination to be in the best interests of the Children. In October 2018, the court terminated Father's parent-child relationship with the Children.

¶6          Father timely appealed, and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1), and -2101(A).

## DISCUSSION

¶7          To terminate a parent-child relationship, a court must find at least one ground for termination by clear and convincing evidence, and also find by a preponderance of the evidence that termination is in the best interests of the child. *Aleise H. v. Dep't of Child Safety*, 245 Ariz. 569, 572, ¶ 7 (App. 2018). We defer to the superior court's factual findings because it "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004)).

## I.     Ground for Termination

¶8          To prove a chronic history of drug abuse as a ground for termination, DCS had to show that Father was "unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition [would] continue for a prolonged indeterminate period." A.R.S. § 8-533(B)(3). "Generally, a parent's temporary abstinence from drugs and alcohol does not outweigh [their] significant history of abuse or [their] consistent inability to abstain during [the] case." *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 17 (App. 2016) (quoting *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 29 (App. 2010)) (internal quotation marks omitted).

¶9          Father admitted to a long history of illicit drug use that started when he was a teenager. By his own admission, he continued to use drugs until over a year had passed since the Children were first removed from their mother's home. In addition, the DCS case manager testified that DCS referred Father to drug treatment, but that those referrals were closed unsuccessfully.

¶10         Dr. Shelton opined that there were "reasonable grounds" to believe that Father's addiction problems would continue for an indeterminate period based on Father's extensive history of drug use and

his responses indicating a lack of awareness that his actions were the cause of the current circumstances. Dr. Shelton also stated that there was a "high risk" that Father would relapse, and relapse would place the Children at risk for neglect. The superior court found Dr. Shelton's testimony credible, and relied on his expert opinion to find that there were reasonable grounds to believe Father's condition would continue for a prolonged indeterminate period.

¶11        Father argues that the trial court erred in finding a ground for severance because he had not used drugs since February 2018, was engaged in a drug treatment program, and his visitations with the children were going well. However, Father did not submit to testing for illegal drugs on a consistent basis until April 2018, only five months before the severance hearing. Moreover, Dr. Shelton stated that even in light of the recent progress made by Father, his opinions regarding Father did not change. The superior court was in the best position to determine whether Father's relatively recent abstinence outweighed his significant history of abuse, *Jennifer S.*, 240 Ariz. at 287, ¶ 17, and we must defer to those findings, *Jordan C.*, 223 Ariz. at 93, ¶ 18.

¶12        Because of the substantial evidence DCS provided at the termination hearing, the court did not err by finding that DCS met its burden in proving a ground for termination under A.R.S. § 8-533(B).

## II.    Best Interests

¶13        To find that termination is in the best interests of the Children, the trial court was required to find that termination would either result in a benefit to the Children or that the Children would be harmed if the relationship was not terminated. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 13 (2018).

¶14        The DCS case manager testified that the Children would likely suffer harm if returned to Father as a result of his unaddressed substance abuse, and lack of protective capacity. In addition, the Children were together with an adoptive placement that was meeting their needs. The superior court found that it would be a detriment to the Children to "have to wait many, many more months, at the very least, for Father to demonstrate sobriety and an ability to parent the Children."

¶15        In light of the evidence presented, the superior court did not err in finding that termination was in the best interests of the Children. *See Jennifer S.*, 240 Ariz. at 287, ¶ 17 ("[A] child's interest in permanency must prevail over a parent's uncertain battle with drugs.").

## CONCLUSION

**¶16**      For the foregoing reasons, we affirm the order of the superior court terminating Father's parental relationship with the Children.



AMY M. WOOD • Clerk of the Court
FILED:  AA