NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO T.A. and J.A.

No. 1 CA-JV 24-0152

FILED 04-29-2025

Appeal from the Superior Court in Yavapai County
No. V1300JD201280010
The Honorable Anna Young, Judge

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer, P.C., Anthem
By Florence M. Bruemmer
*Counsel for Appellant Father*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Angela K. Paton joined.

**T H U M M A**, Judge:

¶1          Cody A. (Father) challenges the superior court's order terminating his parental rights to his children, T.A. and J.A. Father argues the court improperly found termination was in the children's best interests. Because Father has shown no error, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2          T.A. was born in 2012 and J.A. was born in 2014. T.A. and J.A. were originally removed from the care of their mother, Danielle A., by the Department of Child Safety (DCS) in January 2019 because of reported neglect.[1] The children remained in out-of-home care until June 2021, when Father was able to find employment and housing. By August 2022, however, Father and the children were living in a recreational vehicle that had a leaky roof with no electricity, running water or a functioning engine. Father voluntarily placed T.A. and J.A. with DCS for 90 days until he could secure proper housing. *See* Ariz. Rev. Stat. (A.R.S.) § 8-806 (2025).[2]

¶3          By the end of the voluntary placement period, Father had moved into an apartment, but he was living with a new significant other who refused to allow the children in her home at the same time as her own children. Because Father had no safe place for the children to live when the significant other's children were present, DCS filed a dependency petition alleging neglect. Father did not contest the allegations, and the court issued an order adjudicating the children dependent as to Father in December 2022, adopting a case plan of family reunification.

¶4          DCS offered Father various reunification services, including parenting classes, individual and family counseling, anger management, domestic-violence classes and transportation. Father did not engage in most of these services and made inconsistent efforts to engage in parenting classes and counseling. Father failed to obtain appropriate permanent housing and moved repeatedly during the dependency, including out of state. Father also failed to visit the children consistently. This instability had

---

[1] Mother, whose parental rights have been terminated, is not part of this appeal.

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

a negative impact on J.A. in particular, resulting in placement disruptions and, ultimately, separate placement from T.A.

¶5            In August 2023, Father became involved in a second dependency with his significant other after she gave birth to a daughter with Fetal Alcohol Syndrome symptoms. Father admitted the couple drank heavily and used methamphetamine together while his significant other was pregnant. Given this admission, DCS referred Father for substance-abuse services and random drug testing. Father then missed dozens of scheduled drug tests and frequently tested positive for THC and alcohol when he did test.

¶6            Father completed a psychological evaluation with James Thal, Ph.D., in November 2023. Dr. Thal diagnosed Father with alcohol-use disorder, stimulant (methamphetamine) use disorder, an unspecified personality disorder with antisocial traits and an unspecified intellectual disability. Dr. Thal questioned whether Father was willing to acquire adequate parenting skills because he exhibited "callous disregard for the welfare of [his] unborn child" and lacked protective capacities. Dr. Thal further noted Father's substance use was particularly problematic in light of his intellectual challenges.

¶7            At a May 2024 review hearing, the court changed the case plan to severance and adoption. In June 2024, the superior court terminated Father's parental rights to his youngest daughter in another dependency on grounds of chronic substance-abuse and six-months time-in-care. Also in June 2024, DCS filed a motion to terminate Father's parental rights to T.A. and J.A. on grounds of mental-deficiency, chronic substance-abuse, 15-months time-in-care and prior termination. *See* A.R.S. §§ 8-533(B)(3), (B)(8)(c) and (B)(10).

¶8            The court conducted a one-day termination adjudication in July 2024. Father first entered a plea of no contest as to T.A. DCS' case manager testified termination of parental rights was in the children's best interests because Father was "adding more trauma to their lives." She believed keeping the case open would be detrimental to the children because T.A. was in an adoptive placement where he was thriving and J.A., despite not being in an adoptive placement, needed structure, love, care and stability that Father was not willing or capable of providing. She also opined J.A. was adoptable because he is loving, sweet, charming and able to regulate his emotions in a structured environment. Father entered a plea of no contest as to J.A. and left the courtroom before the testimony was

complete. The court granted DCS' severance motion and terminated Father's parental rights under all four grounds alleged.

**¶9** This Court has jurisdiction over Father's timely appeal under A.R.S. §§ 8-235(A), 12-120.21 and 12-2101(A)(1).

## DISCUSSION

**¶10** As applicable here, to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground specified in A.R.S. § 8-533(B) has been proven, *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000), and by a preponderance of the evidence that termination is in the best interests of the child, *Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005). "Because the superior court 'is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts,' this court will affirm an order terminating parental rights so long as it is supported by reasonable evidence." *Aleise H. v. Dep't of Child Safety*, 245 Ariz. 569, 572 ¶ 7 (App. 2018) (citation omitted). A parent who enters a plea of "no contest" waives the right to challenge the sufficiency of the evidence, and the court's review is limited to determining whether a "factual basis" exists to support the termination order. Ariz. R.P. Juv. Ct. 353(e)(3); *see also Tina T. v. Dep't of Child Safety*, 236 Ariz. 295, 298 ¶ 14 (App. 2014), abrogated on other grounds by *Sandra R. v. Dep't of Child Safety*, 248 Ariz. 224 (2020).

**¶11** Father does not challenge the court's findings on the statutory grounds for termination and instead challenges the best interests finding. Father's arguments focus on J.A. only, arguing: (1) DCS had not found J.A. a prospective adoptive placement, (2) the testimony that J.A. is adoptable "is pure[ly] speculation at best" and (3) terminating his rights would not delay permanency given there is no prospective adoptive placement for J.A.

**¶12** "[A] determination of the child's best interest[s] must include a finding as to how the child would benefit from a severance or be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990) (citing cases). In making its determination, the court must consider the totality of the circumstances, including whether the current placement is meeting the child's needs, the child's adoptability and the parent's efforts towards rehabilitation. *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148 ¶ 1 (2018); *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98-99 ¶¶ 10-12 (App. 2016). The record is viewed in the light most favorable to upholding the best interests finding, and findings of fact are to

be affirmed "if reasonable evidence and inferences support them." *See Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3-7 ¶¶ 2, 9, 22 (2016).

¶13 The court found termination of Father's parental rights "would benefit the children because it would further the case plan of adoption, which will provide the children with permanency and stability." The record includes the DCS case manager's testimony that termination was in the children's best interests because they had already been in care for two years and that continuing to keep the case open would add more trauma given the inconsistency and instability. She also testified J.A. has special needs and requires structure, stability and consistency. Although J.A. is not in an adoptive placement currently, the case manager testified he is adoptable because he is only nine years old, loving, sweet, charming and behaves well when his emotions are regulated.

¶14 The court found "[c]ontinuation of the parent-child relationship would be a detriment to the children because it would delay permanency, requiring the children to linger in care for an indeterminate period since the children do not have parents who are able to care for them." Both the case manager and the psychologist testified that Father is unlikely to be rehabilitated to the extent that a young child could safely be placed in his care. The case manager testified Father was not any closer to remedying the circumstances that kept him apart from the children. This was also evidenced by the multiple progress reports the superior court received throughout the procedure.

¶15 Father's appeal, in substance, argues the superior court should have weighed the testimony differently. But it is for the superior court at trial, and not this court on appeal, "to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334 ¶ 4 (App. 2004) (citation omitted). On this record, Father has failed to show the court abused its discretion by concluding termination was in the best interests of the children.

**CONCLUSION**

**¶16**      The order terminating Father's parental rights to T.A. and J.A. is affirmed.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR