NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO J.S.

No. 1 CA-JV 25-0199

FILED 06-19-2026

Appeal from the Superior Court in Maricopa County
No. JS521167
The Honorable Suzanne E. Cohen, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Devin A., Protected Address
*Appellee*

---

**MEMORANDUM DECISION**

Chief Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Veronika Fabian joined.

---

**H O W E**, Judge:

**¶1**        Jenive S. ("Mother") appeals the juvenile court's order terminating her parental rights to her child, J.S. We affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        Mother and Devin A. ("Father") share one daughter, J.S., born February 2020. They never married but were in a rocky, on-and-off again relationship since high school around 2015.

**¶3**        In June 2022, Mother and Father broke up after an argument that escalated into physical violence and Father's arrest. The charges against Father were later dropped, but the Department of Child Safety ("DCS") took custody of J.S. Both parents completed reunification services in August 2023, and J.S. was returned to their care with Father having primary custody.

**¶4**        For the next year, Mother regularly accused Father of abusing J.S. and his grandmother. She would call or report Father to DCS, Adult Protective Services, and the police weekly or more frequently. Officials conducted eight investigations, all concluding that her allegations were unsubstantiated.

**¶5**        In November 2023, Mother withheld J.S. from Father, again accusing him of abuse. Father got a warrant to retrieve J.S. and the court revoked Mother's parenting time. Mother was still allowed supervised visitation, but she neither arranged any visits, nor contacted J.S. for the next 19 months. The visitation costs were not the roadblock; rather Mother believed that Father was responsible for arranging the visits, but that obligation was not in the superior court's order.

**¶6**        Mother moved to enforce her visitation in February 2025. Shortly after, Father moved to terminate her parental rights on the statutory grounds of neglect and abandonment. *See* A.R.S. § 8-533(B)(1), (2). After an

evidentiary hearing, the juvenile court terminated Mother's parental rights on abandonment but denied the neglect claim.

**¶7**        The juvenile court found that Mother abandoned J.S. because she "failed to undertake any of the myriad of responsibilities associated with parenting." It reasoned that Mother "disappeared from [J.S.]'s life for over a year" and that she did not vigorously assert her parental rights. The court also found Mother's testimony that Father prevented her contact with J.S. was not credible.

**¶8**        The juvenile court also held that termination was in J.S.'s best interests. It reasoned that J.S. was adoptable and Father's new wife ("Stepmother") would adopt her. Termination and adoption would allow Father to continue providing a loving, nurturing home with the added benefits of stability and permanency. Last, the court noted that maintaining the parent-child relationship with Mother would harm J.S. because she suffered emotionally from Mother's absence.

**¶9**        Mother timely appealed and we have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

**¶10**        Mother argues on appeal that the evidence does not support the juvenile court's abandonment finding or that termination was in J.S.'s best interests. Father did not file a brief. We could treat his failure to file an answering brief as a concession of error, but instead we decide Mother's appeal on the merits because a child's best interests are involved. *See In re the Marriage of Diezsi*, 201 Ariz. 524, 525 ¶ 2 (App. 2002).

**¶11**        To terminate parental rights, a court must find clear and convincing evidence of at least one statutory ground set forth in § 8-533(B), and that termination is in a child's best interests by a preponderance of the evidence. *Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 213 ¶ 5 (App. 2016). We accept the court's factual findings unless reasonable evidence does not support them and will affirm the termination order unless clearly erroneous. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 4 (App. 2002).

## I.    Abandonment

**¶12**        Parental rights may be terminated if parents abandon their children. A.R.S. § 8-533(B)(1). Abandonment is defined as "the failure of a parent to provide reasonable support and to maintain regular contact with

the child, including providing normal supervision." A.R.S. § 8-531(1). A parent's "[f]ailure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment." *Id.* Abandonment is measured by a parent's conduct, not the parent's subjective intent. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 18 (2000). The court evaluates "whether a parent has provided reasonable support, maintained regular contact, made more than minimal efforts to support and communicate with the child, and maintained a normal parental relationship." *Id.* at 249–50 ¶ 18.

¶13　　　The record contains ample evidence to support the juvenile court's abandonment findings. Following the court's revocation of her parenting time, Mother did not contact or attempt to visit J.S. for 19 months. Mother had Father's contact information and a court order allowing supervised visitation, but failed to take steps to arrange visits. The 19-month gap is prima facie evidence of abandonment. *See* A.R.S. § 8-531(1). Mother did arrange two or three visits following Father's petition; however, the presumption is not "rebutted merely by post-petition attempts to reestablish a parental relationship." *See Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 8 (1990).

¶14　　　Mother argues that she did not intentionally abandon J.S. as evidenced by her parenting before the superior court revoked her parenting time. But abandonment is measured by the parent's conduct, not their subjective intent. *Michael J.*, 196 Ariz. at 249 ¶ 18. We discern no error.

## II.　Best Interests

¶15　　　Mother also challenges the juvenile court's finding that termination is in J.S.'s best interests. Termination is in a child's best interests if the child "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334 ¶ 6 (App. 2004). A child's prospective adoption is evidence of a benefit to support a best-interests finding. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3–5 ¶¶ 12, 17 (2016).

¶16　　　Here, the juvenile court found termination in J.S.'s best interests because Stepmother wants to adopt her. Both Stepmother and J.S. want to proceed with the adoption, and it would result in permanency and stability for J.S. Further, the court found that Father credibly testified that J.S. was emotionally suffering from Mother's failure to parent. Either rationale independently supports finding termination in J.S.'s best interests.

*Aleise H. v. Dep't of Child Safety*, 245 Ariz. 569, 572 ¶ 10 (App. 2018); *Holland v. Holland*, 260 Ariz. 271, 281 ¶ 22 (App. 2025).

**¶17**        Mother argues that termination was not in J.S.'s best interests because Stepmother's love is not contingent on adoption, terminating would cut off other familial relationships, and Mother would no longer be able to watch for Father's abuse. Mother's argument asks us to reweigh the evidence, which we decline to do on appeal. *See Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286–87 ¶ 16 (App. 2016).

### CONCLUSION

**¶18**        We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:            JR