NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ALEJANDRO E., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, K.B., *Appellees*.

No. 1 CA-JV 18-0101
FILED 7-10-2018

Appeal from the Superior Court in Yavapai County
No. P1300JD201600041
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer, PC, Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee, Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge James P. Beene and Judge Jennifer M. Perkins joined.

---

**B R O W N**, Judge:

**¶1** Alejandro E. ("Father") appeals the superior court's order terminating his parental rights to K.B. Because reasonable evidence supports the court's best-interests finding, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

**¶2** K.B. and M.A. (collectively, "children") are the biological children of Amber B. ("Mother").[1] But only K.B., born in November 2008, is the biological child of Father, who was indicted in August 2008 and subsequently sentenced to 25 years' imprisonment.

**¶3** Based on a series of reports regarding Mother and the children, the Department of Child Safety ("DCS") took custody of the children in June 2016, placing them with their maternal aunt and uncle. Shortly thereafter, the superior court found the children dependent as to Mother, and after discovering Father was K.B.'s biological parent, DCS amended the dependency petition to include Father.

**¶4** In June 2017, the superior court granted DCS's motion to change physical custody of the children to M.A.'s biological father and his wife, and four months later, granted DCS's motion to change the case plan to severance and adoption. DCS then moved to terminate Mother's and Father's parental rights, alleging three statutory grounds for terminating Father's parental rights: (1) abandonment; (2) deprivation of civil liberties due to a felony conviction that renders the parent unfit; and (3) deprivation of civil liberties due to the sentence for a felony conviction depriving the child of a normal home for a period of years. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(1), (4).

---

[1] Although Mother's parental rights to both children were terminated, she is not a party to this appeal. Only Father's parental rights to K.B. are at issue here.

**¶5**        Before the severance hearing, Mother filed a motion to appoint a permanent guardian for the children, requesting that M.A.'s biological father and his wife be appointed the children's permanent guardians.  The superior court heard evidence on Mother's motion at the same time it heard evidence on DCS's motion to terminate, and after the evidentiary hearing, granted DCS's motion to terminate and denied Mother's motion to appoint a permanent guardian.  The court found DCS proved all three alleged statutory grounds as to Father and that termination of Father's parental rights was in K.B.'s best interests.  Father then timely appealed the severance ruling.

## DISCUSSION

**¶6**        Father challenges only the superior court's best-interests finding.  Termination of parental rights is in a child's best interests if he or she will "derive an affirmative benefit from termination or incur a detriment by continuing in the relationship."  *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004).  The court may consider evidence "that an existing placement is meeting the needs of the child" or "that the child is adoptable."  *Mario G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 282, 288, ¶ 26 (App. 2011).  "[W]e view the evidence and reasonable inferences . . . in the light most favorable to sustaining the court's decision," and will affirm the superior court's termination order if reasonable evidence supports it.  *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).

**¶7**        The superior court found that termination was in K.B.'s best interests because, among other things, K.B. was in a placement that was meeting all of her needs, would have permanency and stability, was in an adoptive placement, and was adoptable.  The court also found that allowing Father to keep his parental rights would not be in K.B.'s best interests "given the nature of [Father's] offense and his incarceration."  The record supports the court's conclusion that severance was in K.B.'s best interests.

**¶8**        The DCS case manager testified that Father's maximum release date is August 2033.[2]  Father never had any contact or relationship with K.B. "before the beginning of this dependency," and he would be

---

[2]        Father pled guilty to sexual conduct with a minor, a class 2 felony and dangerous crime against children, for "engag[ing] in sexual intercourse or oral sexual contact with . . . a child under the age of fifteen years."  Father is serving an aggravated prison term of 25 years, and is required to register as a sex offender.

unable to develop and maintain a normal parent-child relationship with K.B. because of the nature of his felony and the length of his sentence. Father "wouldn't be able to provide any sort of permanency or stability for [K.B.]," and it would not be "healthy for [K.B.] to have a relationship with [Father]." The case manager opined that K.B.'s current placement has provided her with permanency, stability, and safety, and even if the current placement did not adopt her, K.B. was adoptable and termination of Father's rights was still in her best interests.

¶9　　　　DCS reports, as well as a psychiatric evaluation and clinical progress notes, show that K.B. "ha[s] been through a lot," such as physical abuse and possible sexual abuse, and was diagnosed with post-traumatic stress disorder. She has also had difficulty with extreme tantrums that involve self-harm and harm to others, nightmares, falling asleep, staying asleep, and managing her emotions, such as anger. K.B.'s difficulties and behavioral issues, however, have significantly improved with her current placement, which is meeting all of her needs and which DCS considers to be permanent. The placement is a safe home where K.B. can process her emotions and work through her trauma.

¶10　　　　M.A.'s father testified he brought K.B. into his home because he did not want to separate the children. When K.B. had severe behavioral issues, M.A.'s father and his wife showed her love and that they were there for her, and when she became out of control, they obtained help from the crisis response center. K.B. is stabilized and is now happy, talking about the future, and doing well in school. M.A.'s father is willing to adopt K.B. and put the necessary time and effort in to helping her with her special needs. His wife testified she was willing to adopt K.B., and despite K.B.'s difficulties, she never stopped loving or supporting K.B. and has continued to take classes to help K.B. with her trauma.

¶11　　　　As part of its determination that DCS proved all three statutory grounds, the superior court found that Father's felony conviction "is of such nature as to prove his unfitness to have future custody and control of [K.B.]," and that "[g]iven the nature of the felony, the length of the sentence, and the age of the child, it would be impossible for [F]ather to develop and maintain a normal parent child relationship with [K.B.]." Father did not challenge these findings, which, along with all of the other evidence, show that K.B. would benefit from severance and would be harmed if Father's rights were not severed. *See Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 373, ¶ 31 (App. 2018) ("[T]he same evidence that proves a statutory ground may sometimes provide a basis for a best-interests finding, such as evidence that as a result of termination, 'the child

will be freed from an abusive parent.'" (quoting *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 6 (1990))).

¶12        Father argues termination of his parental rights was not in K.B.'s best interests because other options were available, including granting Father's sister parental rights over K.B. or establishing a guardianship as Mother requested. These arguments, however, are inapposite because the superior court is not obligated to weigh alternative placement options when it makes its best-interests inquiry, *Antonio M. v. Ariz. Dep't of Econ. Sec.*, 222 Ariz. 369, 370-71, ¶ 2 (App. 2009), and establishing a guardianship would have been inappropriate in light of the court's supportable determinations that K.B. was in an adoptive placement and termination of Father's parental rights was in K.B.'s best interests, *see* A.R.S. § 8-871(A)(4) (allowing the court to establish permanent guardianship only if "[t]he likelihood that the child would be adopted is remote or termination of parental rights would not be in the child's best interests").

¶13        Finally, Father suggests that K.B.'s adoptability and her current placement's ability to meet her needs are subordinate to his fundamental parental rights. His suggestion is misplaced because the superior court found he was unfit to parent K.B. based on three statutory grounds. *See Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 15 (2016) ("Once a juvenile court finds that a parent is unfit, the focus shifts to the child's interests. Thus, in considering best interests, the court must balance the unfit parent's diluted interest against the independent and often adverse interests of the child in a safe and stable home life." (citation and quotation omitted)).[3]

---

[3]        Father includes several additional arguments directing us to conflicting or missing evidence relating to K.B.'s best interests. However, we do not reweigh the evidence on appeal. *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 336, ¶ 14 (App. 2004) ("[O]ur function on review is not to reweigh the evidence before the juvenile court or supersede its assessment of the evidence with our own.").

## CONCLUSION

**¶14** We affirm the superior court's order terminating Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:  AA